UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SHOFIUL A.[1],

Plaintiff, Civil Action No. 25-11237

v. David R. Grand
United States Magistrate Judge[2]

COMMISSIONER OF
SOCIAL SECURITY,

Defendant.
______________________________/

**OPINION AND ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT (ECF Nos. 9, 11)**

Plaintiff Shofiul A. ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g), challenging the final decision of Defendant Commissioner of Social Security ("Commissioner") denying his application for Disability Insurance Benefits ("DIB") under the Social Security Act (the "Act"). Both parties have filed summary judgment motions. (ECF Nos. 9, 11).

For the reasons set forth below, the Court finds that the ALJ's conclusion that Plaintiff was not disabled under the Act is not supported by substantial evidence. Thus, the Commissioner's Motion for Summary Judgment **(ECF No. 11)** will be **DENIED**; Plaintiff's Motion for Summary Judgment **(ECF No. 9)** will be **GRANTED**; and this case

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to claimants only by their first names and last initials.

[2] The parties have consented to the undersigned exercising jurisdiction over all proceedings in this civil action pursuant to 28 U.S.C. § 636(c). (ECF No. 7).

will be **REMANDED** to the Commissioner for further proceedings consistent with this Opinion and Order.

### A. Background

Plaintiff was 46 years old at the time of his alleged onset date of February 28, 2023, and at 5'8" tall weighed approximately 190 pounds. (PageID.74, 233).[3] He completed eleventh grade but had no further education. (PageID.234). He previously worked as a long-haul truck driver but stopped working in February of 2023 because of his medical conditions. (PageID.233-34, 257). In his initial application, Plaintiff alleged disability as a result of coronary artery disease, diabetes, hypertension, thyroid impairment, shoulder impairment, acromioclavicular joint arthritis, elevated hemoglobin, back pain, and high cholesterol. (PageID.74, 233).

After Plaintiff's application for DIB was denied at the initial level on June 13, 2023 (PageID.95-98), and on reconsideration on November 6, 2023 (PageID.106-08), he timely requested an administrative hearing, which was held on April 1, 2024, before ALJ Dawn Gruenburg (PageID.51-73). Plaintiff, who was represented by attorney Antwuan Hawkins, testified at the hearing, as did vocational expert ("VE") Heather Benton. (*Id.*). On April 16, 2024, the ALJ issued a written decision finding that Plaintiff is not disabled under the Act. (PageID.35-46). On March 14, 2025, the Appeals Council denied review. (PageID.19-23). Plaintiff timely filed for judicial review of the final decision on April 30, 2025. (ECF No. 1).

---

[3] Standalone citations to "PageID.___" are all to the administrative transcript in this case, which can be found at ECF No. 6-1.

The Court has thoroughly reviewed the transcript in this matter, including Plaintiff's medical record, disability reports, and testimony as to his conditions and resulting limitations. Instead of summarizing that information here, the Court will cite to the transcript as necessary in its discussion of the parties' arguments.

### B. The ALJ's Application of the Disability Framework Analysis

Under the Act, DIB are available only for those who have a "disability." *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). The Commissioner's regulations provide that a disability is to be determined through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two: If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three: If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education, or work experience.
>
> Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that the

> claimant can perform, in view of his or her age, education, and work experience, benefits are denied.

*Scheuneman v. Comm'r of Soc. Sec.*, No. 11-10593, 2011 WL 6937331, at *7 (E.D. Mich. Dec. 6, 2011) (citing 20 C.F.R. § 404.1520); *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). "The burden of proof is on the claimant throughout the first four steps …. If the analysis reaches the fifth step without a finding that claimant is not disabled, the burden transfers to the [defendant]." *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

Following this five-step sequential analysis, the ALJ found that Plaintiff is not disabled under the Act. At Step One, the ALJ found that Plaintiff was not currently engaging in substantial gainful activity ("SGA") but had engaged in SGA after his alleged onset date of February 28, 2023. (PageID.37). At Step Two, the ALJ found that he has the severe impairments of hypertensive cardiovascular disease, obesity, disorder of major joints (shoulder) including acromioclavicular joint arthritis, and disorder of the spine. (*Id.*). At Step Three, the ALJ found that Plaintiff's impairments, whether considered alone or in combination, do not meet or medically equal a listed impairment. (PageID.38).

The ALJ then assessed Plaintiff's RFC, concluding that he is capable of performing sedentary work, with the following additional limitations: needs a handheld device to ambulate and balance; needs a sit/stand option at one-hour intervals; can occasionally climb ramps and stairs but can never climb ladders, ropes, or scaffolds; can occasionally balance, stoop, and crouch but can never kneel or crawl; can occasionally reach overhead with the dominant upper extremity; can perform frequent handling and fingering with the

upper extremities; must avoid concentrated exposure to extreme cold and vibration; and must avoid even moderate exposure to hazards at the worksite. (*Id.*).

At Step Four, the ALJ found that Plaintiff is unable to perform any of his past relevant work. (PageID.44). At Step Five, the ALJ determined, based in part on testimony provided by the VE in response to hypothetical questions, that Plaintiff is capable of performing the sedentary jobs of office clerk (60,000 jobs in the national economy), information clerk (55,000 jobs), and interviewer (25,000 jobs). (PageID.45). As a result, the ALJ concluded that Plaintiff is not disabled under the Act. (PageID.46).

**C. Standard of Review**

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal citations omitted). The phrase "substantial evidence" is a "term of art …." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations omitted). "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Id.* (internal citations omitted). "And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence … is 'more than a mere scintilla.'" *Id.* (internal citations omitted). Specifically, "[i]t means – and means only –

'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (internal citations omitted).

When reviewing the Commissioner's factual findings, the court is limited to an examination of the record and must consider the record as a whole. *See Bass v. McMahon*, 499 F.3d 506, 512-13 (6th Cir. 2007); *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). The court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council," or in this case, the ALJ. *Heston*, 245 F.3d at 535; *Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989). There is no requirement, however, that either the ALJ or this court discuss every piece of evidence in the administrative record. *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal quotations omitted). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted).

**D. Analysis**

As set forth above, the ALJ found that Plaintiff has the severe impairments of hypertensive cardiovascular disease, obesity, disorder of major joints (shoulder) including acromioclavicular joint arthritis, and disorder of the spine. (PageID.37). The ALJ then assessed Plaintiff's RFC, limiting him to sedentary work, with several additional physical limitations. (PageID.38). Before this Court, Plaintiff argues that the ALJ erred in

evaluating his subjective complaints, and that, as a result of these errors, the ALJ's RFC finding is not supported by substantial evidence.[4] (ECF No. 9, PageID.1130-35). For the reasons set forth below, the Court agrees.

When a claimant alleges symptoms of disabling severity, an ALJ must follow a two-step process for evaluating these symptoms. *See Moore v. Comm'r of Soc. Sec.*, 573 F. App'x 540, 542 (6th Cir. 2014); *Massey v. Comm'r of Soc. Sec.*, 409 F. App'x 917, 921 (6th Cir. 2011). First, the ALJ must determine whether there is an underlying medically determinable physical or mental impairment that could reasonably be expected to produce the claimant's symptoms. Second, the ALJ must "evaluate the intensity and persistence of [the claimant's] symptoms so that [the ALJ] can determine how [those] symptoms limit [the claimant's] capacity for work." 20 C.F.R. §§ 404.1529(c)(1); *see also* Soc. Sec. Rul. ("SSR") 16-3p, 2016 WL 1119029, at *4 (March 16, 2016). At the second step of the analysis, the ALJ must review medical evidence, statements by the claimant, other information provided by medical sources, and any other relevant evidence in the record. *See* SSR 16-3p, 2016 WL 1119029, at *4. Beyond medical evidence, the ALJ should consider seven factors: (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects

---

[4] Plaintiff also argues that the ALJ erred in failing to find his alleged mental impairments of anxiety and depression severe at Step Two and/or failing to explain why these medical impairments – even if non-severe – did not impact his ability to function and work. (ECF No. 9, PageID.1131-35). Because the Court is remanding on other grounds, it need not address the merits of this argument in detail. On remand, however, the ALJ should give full and fair consideration to this issue.

of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms; and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. *Id.* at *7. The ALJ need not exhaustively discuss each of these factors – or all of the evidence in the record – but need only acknowledge the factors and discuss the evidence that supports the decision. *See Tonya L. v. Comm'r of Soc. Sec.*, No. 25-10175, 2026 WL 270223, at *13 (E.D. Mich. Feb. 2, 2026) ("The ALJ is not required to discuss methodically each [factor], so long as he acknowledged and examined those [factors] before discounting a claimant's subjective complaints.") (internal quotations omitted). However, the ALJ's decision "must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." SSR 16-3p, 2016 WL 1119029, at *9.

In the ALJ's written decision in this case she set forth the two-part regulatory standard for assessing a claimant's subjective complaints. (PageID.38). The ALJ then discussed Plaintiff's allegations regarding his impairments, activities of daily living, medication and side effects, symptoms, functional restrictions, treatment other than medication, work history, and the objective medical evidence in the record. (PageID.39-43). Ultimately, the ALJ concluded that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, his statements

concerning the intensity, persistence and limiting effects of those symptoms were not entirely consistent with the medical evidence and other evidence in the record. (PageID.43).

In reaching this conclusion, the ALJ began by discussing the cardiac-related medical evidence of record. (PageID.40-43). Specifically, when Plaintiff reported suffering from occasional chest pain with activity for almost a year to his primary care physician during a routine visit in January 2023, he was referred for an exercise stress test. (PageID.313). During that test, which took place on February 28, 2023, Plaintiff reported chest pain and significant EKG changes were noted; thus, he was sent directly via ambulance to Henry Ford Macomb from the cardiology lab. (*Id.*). He was stabilized there and transferred to Henry Ford Main for admission and further testing. (PageID.349-50). As the ALJ noted, a cardiac catheterization performed on March 1, 2023, showed severe multivessel coronary artery disease, and Plaintiff was evaluated on an outpatient basis for coronary artery bypass graft surgery. (PageID.41, 461-62). On March 20, 2023, Plaintiff underwent quadruple bypass surgery. (PageID.996). He remained hospitalized until March 24, 2023. (*Id.*).

At his first post-operative visit to cardiac surgery, on April 11, 2023, Plaintiff reported some persistent chest wall pain but said that he was "doing well" overall. (PageID.555-58). His medications were refilled, he was encouraged to continue to increase his activity to a minimum of 30 minutes per day, and he was advised not to lift more than 10 pounds until 6 weeks after surgery. (PageID.558). The next day, Plaintiff saw his cardiologist, who advised him to remain off work at least 12 weeks post-surgery but referred him cardiac rehabilitation. (PageID.542-43).

The ALJ then referenced Plaintiff's November 15, 2023 visit to his primary care physician, where he indicated that he continued to "get fatigued very easily." (PageID.42, 1105). At that same visit, Plaintiff reported "having difficulty working due to the fatigue and occasional shortness of breath with the activity[,]" saying he had "tried welding but wasn't even able to complete a shift." (PageID.1105). He also indicated that yardwork – even just picking up leaves – was "equally difficult." (*Id.*).

In evaluating Plaintiff's subjective complaints, after discussing the medical evidence set forth above, the ALJ reached the following conclusion:

> As for the claimant's statements about the intensity, persistence, and limiting effects of his symptoms, they are inconsistent because, although he testified that he has not worked since his alleged onset date, nevertheless, according to his earnings record, it shows he was hired after his alleged onset date on July 17, 2023, by Camco Fab LLC with third quarter (July, August, September) earnings of $1,345.00. In addition, he has after onset earnings for the first quarter (January, February and March) 2023 [] of $10,148.00 from Lipari Food Operating Company, LLC, which the undersigned has found to be substantial gainful activity. On November 15, 2023, [Plaintiff's primary care physician] reported the claimant reported he was having difficulty doing "welding" working. He also tried yard work.
>
> The undersigned agrees with the State agency consultants, who find[] the claimant has a history of a major surgical heart procedure, which would reasonably result in some degree of debility afterward. However, the medical evidence of record indicates that he is engaging in increased activity and cardiac rehabilitation. As noted above he was hired by Camco Fab and worked the third quarter of 2023 (July, August, September). His activities of daily living statements of limitation would not be presumed to persist one month following his alleged onset date. He alleges needing a walker and a cane in his activities of daily living, which is not reasonable or supported beyond the hospital use. His prescription for a walker expired in January 2024. In fact, during his testimony, he testified he no longer requires the walker but now uses his cane, as needed. When he goes out, he relies on putting his arm on his wife's shoulder when ambulating.

(PageID.43-44) (internal citations omitted). Plaintiff now argues that the reasons the ALJ articulated for discounting his allegations of disabling limitations are not supported by substantial evidence, and the Court agrees.

First, Plaintiff argues that the ALJ erred by relying on his first quarter earnings to discount his subjective allegations. (ECF No. 9, PageID.1130-31). Specifically, the ALJ found Plaintiff's testimony that he had not worked since his alleged onset date of February 28, 2023, inconsistent with the fact that he had "after onset earnings for the first quarter (January, February and March) 2023 [] of $10,148.00 from Lipari Food Operating Company, LLC …." (PageID.43). Plaintiff asserts, however, that his gross earnings per month in 2022 were approximately $7,010.00, and that even assuming he received no raise in 2023, "he very well could have made $10,000 in the first two months of the year," i.e., prior to his alleged onset date of February 28, 2023. (ECF No. 9, PageID.1130-31). Plaintiff also asserts that he was "off work per his doctor as of March 1, 2023," and that he was in the hospital on March 1 and 2, 2023, as well as from March 20-24, 2023. (*Id.*, PageID.1131; ECF No. 12, PageID.1151-52). Indeed, Plaintiff's medical records indicate that at a visit to his primary care provider on March 9, 2023, he reported that he "can't work due to his current condition" because he "would lift heavy loads and this would cause chest pain." (PageID.310). Thus, contrary to the Commissioner's assertion that Plaintiff's argument on this issue is "simply engaging in speculation about his earnings" (ECF No. 11, PageID.1143-44), the record evidence supports Plaintiff's testimony that he did not work after his alleged onset date. Thus, the ALJ's decision to discount Plaintiff's subjective allegations based on her interpretation of Plaintiff's earning records is not

supported by substantial evidence.

The ALJ also discounted Plaintiff's subjective allegations in part because "he was hired by Camco Fab and performed some work during the third quarter of 2023 (July, August, September)." (PageID.43) (citation omitted). According to the Commissioner, Plaintiff failed to "rebut" this finding. (ECF No. 11, PageID.1144). However, Plaintiff does not appear to dispute the fact that he attempted (unsuccessfully) to work in mid-to-late 2023; indeed, he told his primary care physician in November 2023 that he was having "difficulty working due to the fatigue" and had "tried welding but wasn't even able to complete a shift."[5] (PageID.1105). That is consistent with the record as a whole, which is replete with Plaintiff's complaints of fatigue, even months after his quadruple bypass surgery. For example, at a June 2023 visit to his primary care physician, Plaintiff reported that while cardiac rehabilitation was helping, he was still "very fatigued" after the therapy. (PageID.952). Likewise, at a July 2023 visit to his cardiologist, Plaintiff expressed a desire to return to driving a truck but also reported "generalized fatigue." (PageID.940). The

[5] The Commissioner asserts that the fact that Plaintiff "sought and obtained work in July 2023" is a "valid basis on its own for discounting his allegations." (ECF No. 11, PageID.1144). However, the issue is not that cut and dry, as courts have recognized that claimants should not necessarily be penalized for trying to find gainful employment but failing due to their disability. *See Lingenfelter v. Astrue*, 504 F.3d 1028, 1038 (9th Cir. 2007) ("It does not follow from the fact that a claimant tried to work for a short period of time and, because of his impairments, *failed*, that he did not then experience pain and limitations severe enough to preclude him from *maintaining* substantial gainful employment. Indeed, we have suggested that similar evidence that a claimant tried to work and failed actually *supported* his allegations of disabling pain.") (emphasis in original); *Laabs v. Astrue*, No. 10-C-1050, 2011 WL 2115902, at *7 (E.D. Wis. May 25, 2011) ("Most especially, an ALJ must be ever mindful of the fact that the work attempt proved unsuccessful and avoid effectively punishing a claimant for taking the admirable step of attempting to work despite his claim for disability benefits. A claimant might attempt to work for a variety of reasons, such as personal pride or desperation, other than out of a belief that he is capable of sustained work.").

following month, Plaintiff's primary care physician noted: "[Plaintiff] hasn't been able to work due to fatigue from the heart surgery and medications. He works as a trucker. He has been having difficulty focusing and is very sleepy even while driving.[6] He is having difficulty doing any work … [and even] keeping up with [h]is granddaughter." (PageID.934) (footnote added). Finally, as the ALJ noted, in November 2023, Plaintiff reported that he "continued to get fatigued very easily" and was thus "having difficulty working due to the fatigue …." (PageID.42) (citing PageID.1105). Thus, the ALJ's decision to discount Plaintiff's ongoing reports of fatigue to his providers, as well as his hearing testimony to this effect, simply because "he was hired by Camco Fab and worked the third quarter of 2023 (July, August, September)" (PageID.43) is not supported by substantial evidence.

Finally, the ALJ discounted Plaintiff's subjective complaints because he "allege[d] needing a walker and a cane in his activities of daily living [PageID.247, 272]," which the ALJ believed was not "reasonable or supported beyond the hospital use." (PageID.43). In support of this conclusion, the ALJ noted that Plaintiff's "prescription for a walker expired in January 2024[]."[7] (*Id.*) (citing PageID.662). However, the two records cited by the ALJ

---

[6] The Commissioner argues that this fact fails to detract from the ALJ's decision, because the ALJ concluded that Plaintiff could not return to his past relevant work as a truck driver. (ECF No. 11, PageID.1145) (citing PageID.44). However, the Court finds this evidence significant to the extent it is consistent with Plaintiff's allegations – not just of an ongoing inability to drive trucks, but as to his claims about suffering from persistent and ongoing fatigue and its impact on his ability to perform any work on a sustained basis.

[7] The record cited by the ALJ in support of this proposition indicates that Plaintiff's ambulation is "impaired" and that the "[d]uration of need (in months)" for a rolling walker was 120 months. (PageID.662).

in which Plaintiff expressed needing a walker and/or a cane were function reports, dated April 15, 2023, and October 14, 2023, respectively (thus, prior to the alleged January 2024 expiration of the prescription for a walker). (PageID.247, 272). And, in fact, at the April 2024 hearing before the ALJ, Plaintiff testified that he no longer required the walker but was using his cane, as needed, or putting his arm on his wife's shoulder when she was present. (PageID.61). It is certainly not unreasonable that between the time he filled out the April and October 2023 function reports and the April 2024 hearing, Plaintiff stopped relying on the walker to get around. Moreover, medical records from Get Well Urgent Care dated December 2, 2023, reflect that Plaintiff fell and hit his head on the ground after losing his balance, suffering a laceration to his left eyebrow, which further supports his testimony that he still had difficulty ambulating without some type of assistance at that time. (PageID.1038-43). Thus, the ALJ's decision to discount Plaintiff's testimony about his difficulty walking simply because she believed the walker prescription expired in January 2024 is not supported by substantial evidence.

All told, the ALJ essentially set forth three specific bases for discounting Plaintiff's subjective allegations: the fact that his earnings record was purportedly inconsistent with his testimony that he has not worked since his alleged onset date; the fact that he worked briefly for Camco Fab in July 2023; and the fact that he asserted in (2023) function reports that he used a walker, while the prescription for that walker expired in January 2024. (PageID.43-44). The Court is aware that the ALJ's analysis of the consistency of Plaintiff's statements with other record evidence pursuant to SSR 16-3p – formerly termed a credibility determination – "can be disturbed only for a 'compelling reason.'" *Marsha B.*

*v. Comm'r of Soc. Sec.*, No. 25-13017, 2026 WL 1954874, at *11 (E.D. Mich. June 16, 2026) (citing *Sims v. Comm'r of Soc. Sec.*, 406 F. App'x 977, 981 (6th Cir. 2011) and *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004)). Here, where for the reasons set forth above, none of these bases articulated by the ALJ for discounting Plaintiff's subjective complaints are supported by substantial evidence, the Court finds a "compelling reason" to remand this case for further consideration.

**E. Conclusion**

For the foregoing reasons, the Court **DENIES** the Commissioner's Motion for Summary Judgment **(ECF No. 11)**; **GRANTS** Plaintiff's Motion for Summary Judgment **(ECF No. 9)**; and, pursuant to sentence four of 42 U.S.C. § 405(g), **REMANDS** this case to the ALJ for further proceedings consistent with this Opinion and Order.

**IT IS SO ORDERED.**

Dated: September 21, 2026
Ann Arbor, Michigan

s/David R. Grand
DAVID R. GRAND
United States Magistrate Judge

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on September 21, 2026.

s/Eddrey O. Butts
EDDREY O. BUTTS
Case Manager